UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELINA SEPULVEDA,

               Plaintiff,

v.                                 Case No.  8:20-cv-1136-T-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

               Defendant.

_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.      Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 379–80).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 98–117).  Plaintiff then requested an administrative hearing and ALJ Glen Watkins issued a decision finding that Plaintiff was not disabled, but the Appeals Council vacated that decision and remanded the case for another hearing.  (Tr. 98–123).  ALJ Watkins issued

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

a second unfavorable decision, but the Appeals Council remanded the case again and reassigned the case to ALJ Steven Slahta. (Tr. 124–53). Per Plaintiff's request, ALJ Slahta held a third hearing at which Plaintiff appeared and testified (Tr. 35–57). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 15–24). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1958 (Tr. 35), claimed disability beginning May 19, 2015 (Tr. 37). Plaintiff has attended one year of college (Tr. 431). Plaintiff's past relevant work experience included work as a material marker (Tr. 51–52). Plaintiff alleged disability due to diabetes, anemia, asthma, a thyroid condition, Crohn's Disease, carpal tunnel syndrome, and an unspecified hearing and eye decision (Tr. 430).

In rendering the administrative decision, the ALJ concluded that Plaintiff last met the insured status requirements on June 30, 2016 and had not engaged in substantial gainful activity during the period of her alleged onset date of May 19, 2015 through her date last insured of June 30, 2016 (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: diabetes mellitus, asthma, and anemia (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart

2

P, Appendix 1 (Tr. 20).   The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she would need to avoid even moderate exposure to fumes, dust, odors, and gases, as well as even moderate exposure to hazards (Tr. 20).   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 22).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as a material marker (Tr. 24).   Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues here that the ALJ erred because (1) the ALJ's reasons for giving little weight to Dr. Dicorte's opinion are not supported by substantial evidence; and (2) the ALJ's RFC assessment does not adequately account for Plaintiff's mental health limitations. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    Substantial evidence supports the ALJ's decision to give little weight to Dr. Dicorte's opinion.

Plaintiff first argues that the ALJ's decision to give little weight to the opinion of a consultative examiner, Dr. Samuel Dicorte, M.D., is not supported by substantial evidence (Doc. 17, pp. 9–12).   While an ALJ must ordinarily give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor—such as a doctor who performs a CE—does not merit such deference.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).   An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician.  *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Besides the nature of a physician's relationship with a claimant, the weight of the evidence relied upon by the physician in developing his or her opinion is also relevant to the weight to be afforded that opinion.   Thus, the more a medical source presents evidence to support the opinion, such as medical signs and laboratory findings, the more deference is given to that medical opinion.   20 C.F.R. § 404.1527(c)(3).   Similarly, the more consistent the medical opinion is with the record as a whole, the greater the weight to which it is entitled.   20 C.F.R. § 404.1527(c)(4).   In the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion."  *Huntley*, 683 F. App'x at 832 (citations omitted) (emphasis in original); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

6

Plaintiff saw Dr. Dicorte in April 2016 for a consultative examination (Tr. 613–29). Dr. Dicorte examined Plaintiff and completed a questionnaire in which he opined that Plaintiff was limited in sitting, standing, and walking for periods of time, she had limitations involving her upper right extremity, she was limited in performing postural functions, performing constant activity with her left upper extremity, operating foot controls, and tolerating additional types of environments (*Id.*).

The ALJ identified several reasons for giving little weight to Dr. Dicorte's opinion (Tr. 22–23). First, the ALJ considered that while Dr. Dicorte examined the Plaintiff, he saw her only once near the end of the period at issue. *See* 20 C.F.R. § 404.1527(c)(2)(i) (listing length of treatment relationship and frequency of examination as a factor to be considered in giving weight to medical opinions). Second, the ALJ found that Dr. Dicorte's opinion was inconsistent with other medical evidence (Tr. 22). *See* 20 C.F.R. § 404.1527(c)(4) (listing consistency as a factor to be considered in giving weight to medical opinions). In particular, the ALJ noted that no other treating or examining source assessed a cervical or right shoulder impairment, nor significantly reduced range of motion at the right shoulder (Tr. 22). Third, the ALJ found Dr. Dicorte's own examination findings to be inconsistent with the limitations he identified in the questionnaire (Tr. 23). Specifically, the ALJ found Dr. Dicorte's findings that Plaintiff had 5/5 motor strength, no muscle spasm, no motor loss or muscle atrophy, normal reflexes, and no loss of sensation to be inconsistent with his proffered limitations (*Id.*). Fourth, the ALJ found Dr. Dicorte's limitations to be inconsistent with each other, "such as reaching limitations with the right upper extremity and an ability to lift and carry 50 pounds for 2 to 3 hours

of an 8-hour workday." (Tr. 23). Fifth, the ALJ gave little weight to Dr. Dicorte's findings because the ALJ found the limitations he identified to be inconsistent with Plaintiff's own reports. Specifically, the ALJ found Dr. Dicorte's conclusion that Plaintiff could walk for thirty minutes to be inconsistent with Plaintiff's previous reports that she could walk for up to a mile. Sixth, and finally, the ALJ found that the Dr. Dicorte did not provide support for the identified limitations (*Id.*). *See* 20 C.F.R. § 404.1527(c)(3) (stating that more weight is given to sources that present evidence to support a medical opinion).

Of the six reasons identified by the ALJ, Plaintiff appears to only challenge the second, third, fourth, and fifth reasons. In other words, Plaintiff fails to address the ALJ's consideration of the length and frequency of the treatment relationship, as well as the lack of support provided by Dr. Dicorte for the identified limitations. These reasons are supported by substantial evidence and support the ALJ's decision to assign Dr. Dicorte's opinion little weight. To that end, even if the other articulated rationales were not supported by substantial evidence, the error would be harmless. *See Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) (stating that any factual mistake made the ALJ was harmless in light of the rest of the evidence). Regardless, the other bases listed by the ALJ were supported by substantial evidence for the reasons explained below.

The ALJ's second reason for giving little weight to Dr. Dicorte's opinion is that it was inconsistent with other medical evidence (Tr. 22). In particular, the ALJ noted that no other treating or examining source assessed a cervical or right shoulder impairment, nor significantly reduced range of motion at the right shoulder (Tr. 22). In essence, Plaintiff argues that other medical evidence exists that *could* corroborate a right shoulder

impairment. First, Plaintiff cites to a June 2016 CT scan from Brandon Hospital that showed that Plaintiff had a mild asymmetrical soft tissue prominence surrounding the right sternoclavicular joint (Doc. 17, p. 10; Tr. 636). The ALJ expressly referenced this *mild* prominence, however, while also noting that "no serious abnormalities were discovered" during Plaintiff's June 2016 visit to Brandon Hospital (Tr. 21).[2] Plaintiff also argues that the observation of Dr. Bhupendra Gupta, M.D.—another consultative examiner—that Plaintiff displayed symptoms of osteoarthritis corroborates Dr. Dicorte's opinion that she had a right shoulder impairment (Doc. 17, p. 10–11; Tr. 592). As an initial matter, Plaintiff fails to explain how having osteoarthritis corroborates having limited mobility in her right shoulder. Regardless, Dr. Gupta also expressly found that Plaintiff displayed 5/5 motor strength in her right shoulder (Tr. 591). As such, substantial evidence supports the ALJ's conclusion that Dr. Dicorte's opinions were inconsistent with other medical evidence.

The ALJ's third articulated reason for giving little weight to Dr. Dicorte's opinion is that Dr. Dicorte's own examination findings were inconsistent with the limitations he identified in the questionnaire (Tr. 23). Specifically, the ALJ found Dr. Dicorte's findings that Plaintiff had 5/5 motor strength, no muscle spasm, no motor loss or muscle atrophy, normal reflexes, and no loss of sensation to be inconsistent with his proffered limitations (*Id.*). Plaintiff argues that this was erroneous because Dr. Dicorte accounted for the 5/5 motor strength finding by acknowledging that Plaintiff could carry up to fifty pounds

---

[2] Indeed, the treating physician found the CT scan results to be "unremarkable." (Tr. 637).

occasionally and up to ten pounds frequently (Doc. 17, p. 11). That Dr. Dicorte "accounted for" one identified examination finding with a related limitation is insufficient to establish that the ALJ erred in finding that *several* of Dr. Dicorte's examination findings were inconsistent with his limitations.

The ALJ's fourth reason for giving little weight to Dr. Dicorte's opinion is that Dr. Dicorte's limitations appear to be inconsistent with each other, "such as reaching limitations with the right upper extremity and an ability to lift and carry 50 pounds for 2 to 3 hours of an 8-hour workday." (Tr. 23). Plaintiff argues in a conclusory manner that this was error because occasional reaching is consistent with the ability to occasionally lift and carry fifty pounds. Here, Plaintiff seems to request that this Court substitute its opinion for that of the ALJ. This is impermissible, and the ALJ's conclusion is supported by substantial evidence.

The ALJ's fifth reason for giving little weight to Dr. Dicorte's findings is that the ALJ found the limitations he identified to be inconsistent with Plaintiff's own reports (Tr. 23). Specifically, the ALJ found Dr. Dicorte's conclusion that Plaintiff could walk for up to thirty minutes to be inconsistent with Plaintiff's previous reports that she could walk up to a mile. Plaintiff argues this was error because "[a] person should be able to walk a distance of one mile within 30 minutes." (Doc. 17, p. 12). Regardless of whether this is true, this Court must review the ALJ's factual findings with deference. *Keeton*, 21 F.3d at 1066.

It is worth emphasizing that the task of this Court is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of

10

the Commissioner.  To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, this Court cannot.  Where, as here, the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if this Court would have reached a different conclusion. *Bloodsworth*, 703 F.2d at 1239.

        **B.**    **The RFC assessment adequately accounts for Plaintiff's mental health limitations**.

Next, Plaintiff argues that the ALJ erred in determining her RFC because the RFC does not adequately account for Plaintiff's mental health limitations (Doc. 17, pp. 16–17). Dr. Nekeshia Hammond, Psy.D., a consultative psychologist, found that Plaintiff had a mild limitation in interacting with others and a mild limitation in her ability to understand, remember, and carry out instructions (Tr. 609–10).  In support of these conclusions, Dr. Hammond explained that Plaintiff's increased anxiety and history of depressive features *may* impact her interactions with coworkers, supervisors, and the public (Tr. 610).  Dr. Hammond also explained that Plaintiff's symptoms *may* impact her ability to understand, remember, and carry out instructions (Tr. 609).  Plaintiff argues that, because the ALJ assigned great weight to Dr. Hammond's opinion, her RFC assessment should have included limitations on Plaintiff's interaction with others and her ability to remember and carry out instructions in the workplace.

The ALJ primarily discussed Plaintiff's mental impairments at step two of the five-step sequential analysis, finding that Plaintiff's mental impairments were non-severe (Tr. 18–20).  In reaching this conclusion, the ALJ discussed Dr. Hammond's report in detail. Dr. Hammond's report noted that Plaintiff had no history of medication or counseling for

her reported depression and anxiety (Tr. 605).  Dr. Hammond's report also detailed generally normal mental status evaluation findings, including appropriate mood, open interaction style, steady speech, no problem expressing herself, no auditory or visual hallucinations, and full orientation (Tr. 18, 607).

The ALJ properly found that Plaintiff had only a mild limitation in understanding, remembering, and applying information.  In support of this finding, the ALJ explained that Plaintiff's primary care provider documented normal recent and remote memory (Tr. 19, 599, 702, 718).  Additionally, Plaintiff reported an ability to follow written and spoken instructions on her function report (Tr. 19, 451).  The ALJ also properly found that Plaintiff had only a mild limitation in interaction with others (Tr. 19).  Plaintiff reported spending time with others and being able to shop in stores on a regular basis (Tr. 19, 449–50).  Dr. Hammond's report also noted that Plaintiff had no trouble shopping and visiting a friend's home, and that Plaintiff had an open interaction style and no problem expressing herself (Tr. 607).

The crux of Plaintiff's argument, then, is that the RFC assessed by the ALJ fails to incorporate these mild limitations.  In determining the RFC, however, the ALJ explained that Plaintiff "had some mild limitations in some areas of mental functioning, but remained able to perform all mental work-related activities." (Tr. 23).   Accordingly, the ALJ properly considered Plaintiff's mental limitations and determined that those did not affect what she could do in a work setting.  *See* 20 C.F.R. § 404.1545(a)(1).

### V.     Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

   1.  The decision of the Commissioner is affirmed.

   2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on this 3rd day of February, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE